IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TEYON STOVER,

                              Petitioner,

        v.                                                    1:15-cv-1507-WSD

GLEN JOHNSON, Warden, Ware
State Prison,

                              Respondent.

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's

Final Report and Recommendation [14] ("R&R").  The R&R considers Petitioner

Teyon Stover's ("Petitioner") Petition for Writ of Habeas Corpus [1] ("Petition")

and Respondent Glen Johnson's ("Respondent") Motion to Dismiss Petition as

Untimely [11] (the "Motion to Dismiss").  The Magistrate Judge recommended

that the Petition be dismissed as untimely, and that no Certificate of Appealability

("COA") be issued.  Also before the Court are Petitioner's Objections [17] (the

"Objections") to the R&R.

## I.    BACKGROUND

In 2006, Petitioner was indicted by the DeKalb County Grand Jury for:

(i) rape; (ii) two counts of kidnapping; (iii) three counts of child molestation; and

(iv) aggravated assault.  ([12.8] at 1).  Petitioner was convicted on all charges, and sentenced to life imprisonment plus sixty (60) years.  (Id.).  Petitioner appealed, and, on August 4, 2008, the Georgia Court of Appeals affirmed Petitioner's conviction and sentence.  Stover v. State, 666 S.E.2d 602, 606 (Ga. Ct. App. 2008).  Petitioner did not seek further appellate review.

On December 29, 2011, over three years after the judgment against Petitioner was affirmed, Petitioner sought collateral review of his conviction and sentence in the Superior Court of Telfair County.  (R&R at 2).  The state habeas court denied relief and, on May 5, 2014, the Georgia Supreme Court denied further review.  (Id.).

One year later, on May 4, 2015, Petitioner filed his Petition, in which he asserts five separate grounds for relief.  On August 3, 2015, Respondent filed his Motion to Dismiss, arguing that the Petition should be dismissed as untimely because it was not filed within the one-year time limitation provided by 28 U.S.C. § 2244(d)(1).  (Mot. to Dismiss at 2).  On November 11, 2015, Petitioner filed his Response [13], arguing that "[g]iven the extreme constitutional errors that occurred at [Petitioner's] trial, the Court should excuse [Petitioner's] untimely filing and should hear his petition for habeas corpus on the merits."  (Resp. at 1).  Petitioner argued that the "fundamental miscarriage of justice exception" to the one-year

limitations period applies to him, because he is "actually innocent" of the crimes to which he was convicted.  (Id. at 2-6).  Petitioner argued also that the one-year limitations period is unconstitutional.  (Id. at 6-8).

On December 1, 2015, the Magistrate Judge issued his R&R, recommending that the Petition be dismissed as untimely because the one-year limitations period for Petitioner to file his habeas petition expired on August 14, 2009, one year after his conviction became final on August 14, 2008.[1]  (R&R at 7).  The Magistrate Judge also determined that: (1) the actual innocence exception to the limitations period does not apply; (2) the one-year limitations period is constitutional; and (3) Petitioner is not entitled to equitable tolling of the limitations period.  (Id. at 8-10).  The Magistrate Judge also recommended that a COA be denied.  (Id. at 10-11).  On December 22, 2015, Petitioner filed his Objections to the R&R, reiterating his arguments that the "actual innocence" exception to the one-year limitations period applies to his case, and that the one-year limitations period is unconstitutional.

---

[1]  Petitioner had ten (10) days from the Georgia Court of Appeals' August 4, 2008, decision in which to file a notice of intention to apply for certiorari.  See Ga. Sup. Ct. R. 38(1).  Petitioner's conviction and sentence became final when this deadline expired.

**II.    DISCUSSION**

    A.    <u>Legal Standard</u>

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); <u>Williams v. Wainwright</u>, 681 F.2d 732 (11th Cir. 1982), <u>cert. denied</u>, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  With respect to findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1050 (1984).

    B.    <u>Analysis</u>

        1.    <u>Timeliness of the Petition</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year statute of limitations to filing a habeas corpus action attacking a state conviction.  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of:

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D).  The limitations period is statutorily tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The Magistrate Judge, after a careful and thorough review of the record, found that the Petition was untimely because the one-year limitations period for Petitioner to file his habeas petition expired on August 14, 2009, one year after his conviction became final on August 14, 2008.  (R&R at 7).  Petitioner does not object to this finding, and concedes that the Petition was untimely filed.  (Obj. at 3).  The Court finds no plain error in this finding and conclusion.  See Slay, 714 F.2d at 1095.

Petitioner has objected to the Magistrate Judge's conclusion that the "actual innocence" exception to AEDPA's one-year statute of limitations does not apply to

him, and to his conclusion that AEDPA's one-year statute of limitations is constitutional.  The Court will consider these argument *de novo*.

2.    Actual Innocence Exception

The Supreme Court recognizes an exception to AEDPA's one-year statute of limitations, holding "that actual innocence, if proved, serves as a gateway through which a petitioner may pass . . . ."  See, e.g., McQuiggin v. Perkins, ⸺ U.S. ⸺, ⸺, 133 S. Ct. 1924, 1928 (2013).  "This rule . . . is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."  Herrera v. Collins, 506 U.S. 390, 404 (1993).  A "claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  Id.  The McQuiggin Court "caution[ed], however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

To establish that the "actual innocence" exception to AEDPA's one-year statute of limitations applies to his case requires Petitioner: "(1) to present new reliable evidence . . . that was not presented at trial, and (2) to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (internal quotations and citations omitted). Petitioner cannot meet this burden.

The Georgia Court of Appeals summarized the State's evidence against Petitioner, finding that the evidence established that:

> [O]n the morning of January 25, 2006, 15–year–old K.H. was walking to a bus stop. A man approached her and asked her name and whether she had a boyfriend. The man grabbed K.H. from behind, told her to get in his car, and, when he pulled out a gun, she complied.
>
> The man told K.H. to put her head between her legs, drove her to a place she did not recognize, and ordered her to take her pants off. The man told her to cooperate if she did not want to be hurt. He then "took his pants off and ... had unwanted sex with [her]," also touching K.H.'s vagina with his finger, and kissing her on the neck.
>
> Afterward, the man drove K.H. to the bus stop to which she had been en route. K.H. exited the vehicle leaving behind her notebook. She noted the car's license plate, waited for the man to drive off, and then cried rape to a woman who was exiting a nearby post office. According to the woman, K.H. was "crying and she was frantic and her clothes were unbuttoned." After the police arrived, K.H. told them what had happened and gave them the license plate number.

Later that morning, a medical doctor examined K.H. According to the doctor, K.H. had a vaginal injury which, considering the placement of the tear, exhibited a "high probability" of forced entry. The doctor completed a sexual assault kit, but later analysis of the sample at the crime laboratory failed to show the presence of DNA other than that of K.H.

In a separate incident, evidence showed that 21-year-old T.B. was walking to a bus stop on the morning of February 3, 2006. She observed a man cross over from the opposite side of the street. The man followed her, asking her name. He grabbed her from behind, dragged her, and threatened her with a gun, letting her go only when a passing car stopped. T.B. ran to the car, and a passenger therein called 911.

This incident occurred less than a mile away from the place of K.H.'s abduction. Concerned about the similarities between the two crimes, the responding police officer decided to canvass the area. In a nearby cul-de-sac, the officer spotted a car with a license plate number that was only one digit off from the number provided to police by K.H. [Petitioner] appeared on the scene during the ensuing investigation and, among other things, told an officer that he owned the car. Inside the car, police found a notebook with K.H.'s name written in it.

At trial, K.H. identified [Petitioner] as her assailant. T.B. also identified [Petitioner] as the man who attacked her.

Stover, 666 S.E.2d at 604.

Petitioner argues that: (1) there is no physical evidence linking K.H.'s notebook in his car; (2) his car does not match the description of the assailant's car or the license plate number K.H. described to the investigator police officer; and (3) K.H.'s description of the assailant was general and indefinite. (Obj. at 5-7).

8

Petitioner, at trial, argued that this was a case of mistaken identity, and that he was not the perpetrator of the crimes.  (Id. at 8); Stover, 666 S.E.2d at 605.

None of the "evidence" Petitioner argues establishes his innocence is "new evidence," as required to be entitled to the "actual innocence exception" to AEDPA's one-year statute of limitations.  Petitioner, thus, is not entitled to this exception.

Petitioner, citing Schlup, argues that new evidence "is not absolutely required to satisfy the exception."  (Obj. at 4).  The Schlup Court stated:

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.  However, if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

Schlup, 513 U.S. at 316 (emphasis as added by Petitioner).  Petitioner's interpretation of the Schlup decision is mistaken.  As the Magistrate Judge noted, the first sentences explains that a petitioner without new evidence to present is not entitled to have the merits of his claim, even if meritorious, adjudicated by the district court.  By contrast, the second sentence, starting with "[h]owever, if," explains that if a petitioner has "strong" new evidence of innocence, he may be

entitled to have his claim adjudicated on the merits despite being untimely.  The second sentence is not meant to establish a right to assert an actual innocence claim in the absence of new evidence.  This interpretation is further bolstered by the Schlup Court's later discussion of the standard, where it explained that an actual innocence claim, "[t]o be credible . . . requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  Schlup, 513 U.S. at 324; see also Arthur v. Allen, 452 F.3d 1234, 1245 (11th Cir. 2006) (quoting Schlup).

Assuming, *arguendo*, that Petitioner was entitled to support his actual innocence claim without providing new evidence, the evidence presented by Petitioner is insufficient "to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of this evidence.  See Rozzelle, 672 F.3d at 1011.

Petitioner argues that there is no physical evidence linking K.H.'s notebook in his car, and that the investigating officer that took pictures of the car's interior was unable to produce a picture of the notebook in the car.  (Obj. at 5-6).  During trial, however, the same investigator testified that she recovered a "notebook with the name [K.H.] written inside the notebook" from inside the car.  (Pet. at 12).  The

lack of pictures of the notebook in the car does not negate the testimonial evidence that the notebook was found in the car.[2]

Petitioner argues also that his car did not match the description of the assailant's car, and that the license plate number K.H. described to the investigating police officer was not the same as his license plate number. (Obj. at 6). Petitioner asserts that K.H. described the assailant's car as having pop-up headlights, which Petitioner's car does not have. (Id.). Petitioner asserts also that the license plate number given to the police by K.H. was one digit off Petitioner's license plate, and that the car that had the actual number given had pop-up lights, as described by K.H. (Id.).

The Court notes that, aside from the pop-up lights, Petitioner's car matched the description of the car provided by K.H. Stover, 666 S.E.2d at 606. In addition, the license plate number K.H. provided was only one digit off of Petitioner's license plate. This close match, combined with the testimony of the investigating

---

[2]     Petitioner argues that the trial court improperly suggested that a picture of the notebook inside the car had been admitted into evidence. (Pet. at 16-18). While the trial judge did state during the questioning of the investigator that he believed the photo had been admitted, it was immediately pointed out that the judge was thinking of the notebook itself, and not a photograph of it in the car. (Id. at 17). The investigator then acknowledged that she did not have a photo of the notebook in the car. (Id. at 18). The jury, thus, was aware there was no photographic evidence that the notebook was inside the car, and considered only the investigator's testimony that the notebook was found there. Petitioner's argument of trial error is without merit.

officer that K.H.'s notebook was found in Petitioner's car, is substantial evidence negating Petitioner's claim of actual innocence.

Finally, Petitioner argues that K.H.'s description of the assailant was general and indefinite, as she described her assailant as a short, young, black male with bug-eyes.  However, both K.H. and T.B. identified Petitioner as their assailant at trial.  Stover, 666 S.E.2d at 604.

In short, Petitioner's evidence, none of which is new, when viewed through the additional evidence submitted at trial, is insufficient "to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of this evidence.  See Rozzelle, 672 F.3d at 1011. Petitioner cannot establish that he is actually innocent of the crimes to which he was convicted.  The Court concludes, on *de novo* review, that Petitioner is not entitled to have his untimely Petition considered by the Court based on the "actual innocence" exception to AEDPA's one-year statute of limitations.  See 28 U.S.C. § 2244(d)(1), (2); McQuiggin, 133 S. Ct. at 1928.[3]

---

[3]     Belying Petitioner's theory at trial that this is a case of mistaken identity is his statement to the police that he and K.H. had engaged in consensual sex.  Stover, 666 S.E.2d at 605.  The trial court excluded this statement because it was deemed involuntary, based on Petitioner being beaten before his interrogation and being in physical pain while being interrogated.  (Obj. at 9).  Petitioner objected to the Magistrate Judge's reliance on this statement to conclude that Petitioner could not prove actual innocence.  The Court, because it did not rely on this statement in

3.     Constitutionality of Limitations Period

AEDPA requires that a federal habeas petition be filed within one year of a judgment becoming final, tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1), (2). Georgia law requires that a state habeas petition challenging a felony conviction be filed within four years of a judgment becoming final. O.C.G.A. § 9-14-42(c). Petitioner argues that this creates a "federal time trap" wherein a criminal defendant may wait longer than one year to file their state habeas petition, thus losing their right to seek federal review. (Obj. at 11). Petitioner argues that AEDPA's one-year statute of limitations violates his Due Process rights under the Fifth Amendment, when combined with the longer time period Georgia permits for state collateral review. (Obj. at 10-12).

Petitioner does not cite any legal authority, and the Court likewise has not found any, to support his contention that AEDPA's one-year statute of limitations is unconstitutional when combined with a longer state statute of limitations. The Eleventh Circuit, in Tinker v. Moore, 255 F.3d 1331 (11th Cir. 2001), previously considered, and rejected, a claim that AEDPA's one-year statute of limitations is

_____

reaching its conclusion that Petitioner could not meet the high burden to establish actual innocence, does not address this objection.

13

unconstitutional when applied in concert with a longer state limitations period.

Tinker, 255 F.3d at 1334.  The Tinker Court noted that the availability of equitable

tolling ensures AEDPA's one-year statute of limitations is constitutionally applied.

Id.  A petitioner's ability to argue actual innocence with the presentation of new

evidence further allows a petitioner to avoid an unjust application of AEDPA's

one-year statute of limitations.

The Court rejected Petitioner's actual innocence argument, and Petitioner is

not entitled to equitable tolling of the limitations period.[4]  The Court, on *de novo*

review, concludes that AEDPA, in spite of its one-year statute of limitations,

provides a petitioner with a sufficient opportunity to be heard, and Petitioner's

contention that it violates his Due Process rights is without merit.  See Tinker, 255

F.3d at 1334; Heredia v. Sec'y, Florida Dep't of Corr., 566 F. App'x 853, 856

---

[4]      In addition to statutory tolling, the AEDPA's limitations period is subject to
equitable tolling, an "extraordinary remedy" which requires a petitioner to
demonstrate both "(1) diligence in his efforts to timely file a habeas petition and
(2) extraordinary and unavoidable circumstances."  Arthur, 452 F.3d at 1252.
While Petitioner does not argue that equitable tolling applies, the Magistrate Judge
considered equitable tolling, and concluded that Petitioner had not established that
he had been diligently pursuing his rights and was not, therefore, entitled to
equitable tolling of AEDPA's one-year statute of limitations.  (R&R at 9).
Petitioner did not object to this finding and conclusion, and the Court finds no
plain error in the Magistrate Judge's determination that Petitioner is not entitled to
equitable tolling.  See Slay, 714 F.2d at 1095.

(11th Cir. 2014) ("The essence of due process is an opportunity to be heard at a meaningful time and in a meaningful way.").

### 4.   Certificate of Appealability

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2). When a district court has denied a habeas petition on procedural grounds without reaching the merits of the underlying constitutional claim, the petitioner must show that (1) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," and that (2) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  Slack v. McDaniel, 529 U.S. at 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Id.

The Magistrate Judge concluded that the decisive procedural issue, untimeliness, was not debatable, and that a COA should not be issued.  The one-year limitations period expired before Petitioner filed his Petition, rendering statutory tolling inapplicable, and Petitioner is not entitled to the "actual innocence" exception or to equitable tolling.  Petitioner did not object to this

finding and conclusion, and the Court finds no plain error in the Magistrate Judge's

determination that a COA should not be issued.  See Slay, 714 F.2d at 1095.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's

Final Report and Recommendation [14] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Respondent's Motion to Dismiss

Petition as Untimely [11] is **GRANTED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is

**DENIED**.


**SO ORDERED** this 1st day of February, 2016.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE